UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| MICHAEL GLASGO, individually, and on behalf of others similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> UBER TECHNOLOGIES, INC., a Delaware corporation, <br><br> *Defendant*. | **CLASS ACTION** <br><br> **JURY TRIAL DEMANDED** <br><br> **Case No:** |

**COMPLAINT FOR STATUTORY DAMAGES UNDER THE TELEPHONE CONSUMER PROTECTION ACT (TCPA)**

1. This action arises under the federal Telephone Consumer Protection Act, or TCPA, a remedial statute enacted in 1991 in response to consumer outrage over the proliferation of intrusive, nuisance telemarketing practices. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012). At various times, and on numerous instances within the four (4) year period prior to the filing of this complaint Defendant sent, or caused to be sent unsolicited text messages to Plaintiff's cellular telephone using an automatic telephone dialing system ("ATDS") in violation of the TCPA despite Plaintiff's several requests that the text messages stop.

2. Defendant UBER TECHNOLOGIES, INC.'s ("Uber") business is predicated on instantaneous automatic text message communications with its customers, yet despite this Uber failed to take any corrective action to curb their violative practice of sending automated verification code text messages. *See Berg v. Merchants Assoc. Collection Div., Inc.,* 586 F.Supp.2d 1336, 1344 (S.D. Fla. 2008) (calling automated telephone messages an "inherently risky

method of communication" and noting that debt collectors use such a mode of communication at their peril).

3. Upon information and belief, Uber knew it was flagrantly violating the TCPA. However, Uber failed to take effective action to stop the violations, and chose to save on the costs of solving the problem at the expense of the privacy and frustration of its customers.

4. Accordingly, Plaintiff, alleges as follows upon personal knowledge as to himself, his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

5. On behalf of themselves and the members of the classes, Plaintiff seeks injunctive relief and an award of statutory damages to the class members.

## JURISDICTION AND VENUE

6. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

7. Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to

personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within the State of Florida and, on information and belief, Defendant placed the same class complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the State of Florida.

## PARTIES

8. Plaintiff, Michael Glasgo, ("Plaintiff") is a natural person who, at all times relevant to this action, was a resident of Hillsborough County, Florida.

9. Defendant, Uber Technologies, Inc. is a multinational corporation that provides transportation services that connects passengers to automobile drivers via Uber's iPhone and various smartphone applications. Uber is a Delaware corporation whose principal address is 1455 Market Street, 4th Floor, San Francisco, CA 94103 and whose registered agent for service of process in the State of Florida is CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.

10. Uber directs, markets, and provides its business activities throughout the United States, including the State of Florida.

11. Whenever in this complaint it is alleged that Uber committed any act or omission, it is meant that the Defendant's affiliates, subsidiaries, officers, directors, vice-principals, agents, sub-agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Uber or was done in the routine normal course and scope of employment of the Uber's affiliates, subsidiaries, officers, directors, vice-principals, agents, sub-agents, servants, or employees.

## AN OVERVIEW OF THE TCPA

12. The TCPA was enacted more than twenty (20) years ago to regulate the explosive growth of telemarketing, which Congress recognized as a nuisance and an intrusive invasion of privacy.

13. To demonstrate a violation of the TCPA, the Plaintiffs need only show that Defendant called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice. *Breslow v. Wells Fargo Bank, NA*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012).

14. A text message is considered a "call" under the TCPA. *See Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 952 (9th Cir. 2009) ("[W]e hold that a text message is a 'call' within the meaning of the TCPA."); *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305 (11th Cir. 2015) ("The prohibition against auto dialed calls applies to text message calls as well as voice calls.") (c*iting In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 18 FCC Rcd. 14014, 14115 ¶ 165 (Fed. Commc'n Cmm'n July 3, 2003) ("2003 FCC Order") (affirming that the prohibition against automatic telephone dialing in § 227(b)(1) "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls").

15. The TCPA creates a private right of action for affected consumers, and allows them to recover the greater of their actual monetary loss or up to $500 per call for each violation. 47 U.S.C. § 227(b). It also allows the district court to increase the award up to treble statutory damages if it finds the defendant's violation was willful or knowing. *Id*. at 1318. *See also Mims,* 132 S. Ct. at 746.

16.     The TCPA exempts calls "made for emergency purposes" from liability under the statute. 47 U.S.C. § 227(b)(1)(A). Federal law defines "emergency purposes" as "calls made necessary in any situation affecting the health and safety of consumers." 47 C.F.R. § 64.1200(f)(4).

17.     By way of example, in its Declaratory Ruling and Order of July 10, 2015, the Federal Communications Commission ("FCC") provided several new "emergency purpose" exemptions from the TCPA. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 et al.*, CG Docket No. 02-278, July 10, 2015.[1]

18.     Specifically, the FCC held that calls and texts from banks and other financial institutions intending to prevent fraudulent transactions, identify theft, or data breaches are exempted. *Id.* at ¶¶ 127-132.  The FCC rationalized that the calls and texts are intended to address exigent circumstances in which a timely communication with a consumer could prevent considerable consumer harm from occurring or quickly mitigate the extent of harm that will occur. *Id*. at ¶ 132.

19.     Critically, these exigent circumstances exceptions in the context of banks and financial institutions for sending text messages and placing calls are subject to additional conditions, which include:

    1.  May only be made to the cell phone number provided by the customer;

---

[1] The FCC's interpretation of the TCPA is binding on this Court. See 28 U.S.C. § 2342 (the Hobbs Act). Under the Hobbs Act, 28 U.S.C. § 2342, Congress unambiguously deprived federal district courts of jurisdiction to invalidate FCC orders by giving exclusive power of review to the courts of appeals. *Mais v. Gulf Coast Collection Bureau, Inc*., 768 F.3d 1110, 1113 (11th Cir. 2014); *see also*, *Murphy*, 797 F.3d at 1307.

2. Must include the name and contact information of the financial institution;

3. Are strictly limited to the purposes discussed above and do not include any form of marketing, solicitation, debt collection or advertising;

4. Must generally be less than one minute in length (voice calls) or less than 160 characters (text messages);

5. Cannot be made more than three times per event over a three-day period;

6. Must offer an easy way to opt-out of future messages; and

7. A financial institution must honor opt-out requests immediately.

*Id.* at ¶ 138.

20. Uber's "Uber Code" text messages failed to satisfy several of these exigent circumstance conditions.

## FACTUAL ALLEGATIONS

21. Uber is a peer-to-peer ridesharing, ride sharing, taxi cab, food delivery, and transportation networking company with operations in 785 metropolitan areas worldwide.[2]

22. The almost exclusive method in which Uber communicates with drivers (both prospective and existing), riders, and the public at large is through SMS text messages sent to consumers' cellular telephones.

23. An "SMS message" is a text message call directed to a wireless device through the use of telephone number assigned to the device.[3]

---

[2] https://www.uber.com/cities/ (Last Accessed: December 28, 2018).
[3] https://www.twilio.com/learn/messaging/what-are-sms-and-mms (Last Accessed: December 31, 2018).

24. Uber uses SMS messaging to communicate with consumers' regarding their ride sharing, as well as to alert them as to any potential problems with their Uber account.

25. In order to send SMS messages to its customers, Uber partnered with Twilio, Inc., a leading technology company that is best known for enabling companies or customers (as known as Twilio's "developers") to build SMS-based communication services through the use of its Application Program Interface ("API").[4]

26. Twilio allows its consumers such as Uber, to build customizable SMS-based API solutions, that operate automatically which allow communication between Uber and its customers.[5]

27. Twilio also provides services as an SMS aggregator. An SMS aggregator uses computerized messaging technology to serve as an intermediary or bridge between a company's messaging platform and the cellular telephone networks, allowing companies to send automated messages to consumers' cellular telephones *en masse*.[6]

28. The impersonal and generic nature of Defendant's "Uber Code" text messages, combined with the large number of messages sent by Defendant, demonstrates that Uber utilizes an ATDS in transmitting the messages.

29. According to an Uber spokesperson, "These [Uber] codes are sent when someone tries to create an account using your phone number — which is usually a typo or an automated bot trying to create a fake account." Uber also claims that consumers are not at risk because "the text

---

[4] https://customers.twilio.com/208/uber/ (Last Accessed: December 31, 2018).
[5] *Id.*
[6] https://www.twilio.com/docs/glossary/what-is-a-sms-gateway (Last Accessed: December 31, 2018).

is sent to verify the phone number before creating an account." which cannot be created "without first confirming you own the phone number entered in the sign up process."[7]

30. Consequently, upon information and belief, no emergency situation exists that would justify an exigent circumstances exception for "Uber Code" text messages.

31. Additionally, Uber claims that typing the word "STOP" would prevent getting further texts.[8]

32. The FCC has stated that companies must provide an opt-out mechanism in their text messages. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling as to Petition of Soundbite Communications, Inc*. CG Docket No. 20-278 (November 29, 2012); *see Osorio v. State Farm Bank, F.S.B*., 746 F.3d 1242, 1255 (11th Cir. 2014) ("Congress intended for the TCPA to incorporate the common-law meaning of consent, including its revocation"); *see also Ganger V. Dell Fin. Servs., LLC*., 727 F.3d 265, 272 ("In sum, we find that the TCPA provides consumers with the right to revoke their prior express consent to be contacted on cellular phones by autodialing systems").

33. Upon information and belief, consumers across the country have received these texts, and even consumers who deleted their Uber accounts still received these automated intrusive and unnecessary text messages.[9]

34. At all times relevant herein, Plaintiff is the subscriber and sole user of the T-Mobile plan for the cellular telephone number \*\*\*-\*\*\*-4022.

---

[7] https://www.nbcmiami.com/news/local/Whats-Going-on-With-Mysterious-Uber-Code-Texts--492037351.html (Last Accessed: December 28, 2018).
[8] *Id*.
[9] *Id*.

35. Beginning on or about June 24, 2018, Plaintiff received an automated text message from (334) 605 8143 stating "Your Uber code is 2541". Plaintiff texted "STOP" on June 26, 2018, and received a confirmatory text stating "SMS from Uber is now disabled. To re-enable, reply START."

36. The telephone number (334) 605 8143 is owned either by Uber or its agent acting on behalf of Uber.

37. Despite the requested opt-out, Plaintiff continued to receive these "Uber Code" text messages, and again requested that the text messages "STOP" on July 4 and July 6, 2018. But the text messages continued. Plaintiff texted "STOP" again on July 23, 2018, part and parcel, the Plaintiff continued to receive the messages.

38. Defendant never honored any of Plaintiff's opt-out requests, and at no time did Plaintiff ever reply "START".

39. In some instances, Plaintiff received seven (7) texts a day, and often received more than three (3) texts per day.

40. Defendant's unsolicited automated calls caused Plaintiff actual and tangible harm, including invasion of his privacy, the tying up of his phone line, depletion of battery life leading to less availability of her telephone line in the case of an emergency, aggravation at receiving so many unsolicited messages so frequently, annoyance, intrusion on seclusion, trespass, and conversion. Plaintiff suffered loss of time as a result of responding to the texts, and answering back in attempts to have the calls cease. Defendant's call messages also inconvenienced Plaintiff and caused disruption to his daily life. *See Muransky v. Godiva Chocolatier, Inc.,* 905 F.3d 1200, 1211 (11th Cir. 2018) ("[T]ime wasting is an injury in fact".... "[A] small injury… is enough for standing purposes"). Plaintiff received many of Defendant's

text messages while working, or engaged in important activity. He was disrupted by the text messages and had to stop what he was doing to view and respond to them.[10]

41. Defendant's violations of the TCPA were knowing and willful. Defendant was aware of the purported security issue that resulted in the "Uber Code" text messages that resulted in numerous automated text messages to be sent to Plaintiff and the putative class but failed to take any corrective action.

42. What's more, Uber is aware of the TCPA because Uber was previously sued for and settled a TCPA class action lawsuit. *See Vergara, et al. v. Uber Technologies, Inc*., No. 1:15-CV-06942 (N.D. Ill.)(Filed August 7, 2015)($20M Class Action Settlement).

## CLASS ALLEGATIONS

43. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of all other persons or entities similarly situated throughout the United States.

44. Plaintiff proposes to represent a class and sub-class of persons affected by Defendant's actions, described as follows:

> ***The Opt-Out Class***
> (i) All persons within the United States (ii) to whom Defendant, directly or through a vendor, (iii) sent a "Uber Code" text message to their cellular phone (iv) which individuals opt-ed out of the text messages but subsequently received "Uber Code" text messages (v) using any automatic telephone dialing system or an artificial or prerecorded voice (vi) within the four years preceding the filing of this Complaint, through the date of class certification, (vii) without first obtaining the prior express consent of the recipient of the call.

---

[10] https://www.nbcdfw.com/news/tech/Whats-Going-On-With-Mysterious-Uber-Codes-491468231.html (Last Accessed: December 28, 2018).

45. Excluded from the class is the Defendant, any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

46. The proposed class members are identifiable through phone records and phone number databases.

47. The potential class members number in the thousands, at least. Individual joinder of these persons is impracticable.

48. Plaintiff is a member of the class, and the subclass.

49. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

a. Whether the Defendant used any automatic telephone dialing system or an artificial or prerecorded voice to make telemarketing calls;

b. Whether Defendant placed non-emergency calls without obtaining the recipients' valid prior express consent or, where applicable, prior express written consent;

c. Whether Defendant failed to honor individuals' opt-out requests

d. Whether the Defendant's violations of the TCPA were willful or knowing; and

e. Whether the Plaintiff and the class members are entitled to statutory damages as a result of the Defendant's actions.

50. Plaintiff's claims are based on the same facts and legal theories, and therefore are typical of the claims of class members.

51. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the

classes, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

52. The actions of Defendant are generally applicable to the class as a whole and to Plaintiff.

53. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

54. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

55. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b)

56. Plaintiff incorporates the foregoing paragraphs.

57. It is a violation of the 47 U.S.C. § 227(b)(1)(A)(iii) to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a cellular telephone service…" 47 U.S.C. § 227(b)(1)(A)(iii).

58. Defendant received opt-out requests but failed to honor them.

59. Defendant's violation of the 47 U.S.C. § 227(b)(1)(A)(iii) resulted in, among other things, an invasion of Plaintiff's privacy and right to enjoy the full utility of his cellular device.

60. Defendant is directly and/or vicariously liable for the violations above.

61. As such, Defendant's calls were willful or, at a minimum, negligent. *See* 47 U.S.C. § 227(b)(3). Should the Court determine that Defendant's misconduct was willful and knowing, the Court may, pursuant to section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff.

**WHEREFORE**, Plaintiff, Michael Glasgo, respectfully requests the following relief:

a. A declaration that Defendant's practices described herein violate 47 U.S.C. § 227(b)(1)(A)(iii);

b. An award of statutory damages, including treble damages, in the maximum amount allowed by law,

c. An injunction requiring Defendant to cease all communications in violation of the TCPA; and

d. Such further and other relief the Court deems reasonable and just.

### JURY DEMAND

62. Plaintiff demands a trial by jury

Dated: January 12, 2019

                Respectfully submitted,

                */s/ Scott D. Owens*
                Scott D. Owens, Esq.
                SCOTT D. OWENS, P.A.
                3800 S. Ocean Dr., Ste. 235
                Hollywood, FL 33019
                Tel: 954-589-0588

       Fax: 954-337-0666
       scott@scottdowens.com

       */s/ Leo W. Desmond*
       Leo W. Desmond, Esq.
       DESMOND LAW FIRM, P.C.
       Florida Bar No. 0041920
       5070 Highway A1A, Suite D
       Vero Beach, Florida 32963
       Telephone: 772.231.9600
       Facsimile: 772.231.0300
       lwd@desmondlawfirm.com

       *Counsel for Plaintiff and the Putative Class*