UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL GLASGO,

    Plaintiff,

CASE NO. 8:19-CV-00097-VMS-AAS

v.

UBER TECHNOLOGIES, INC.,

    Defendant.
_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFNDANT UBER TECHNOLOGIES, INC.'S MOTION TO DISMISS, TRANSFER, OR STAY THE ACTION

Plaintiff, Michael Glasgo ("Plaintiff"), hereby responds in opposition to Defendant, Uber Technologies, Inc.'s ("Defendant" or "Uber"), motion to dismiss this case under the first-to-file rule. [ECF No. 16]. The first-to-file rule is completely discretionary, would be misapplied here, and, in any event, Uber cannot demonstrate that, under Fed. R. Civ. P. 1404(a), transfer of this case to the Northern District of California is in the interest of justice, or will be more convenient to the parties and witnesses than the Middle District of Florida.

## INTRODUCTION AND BACKGROUND

Defendant's motion is predicated on two different legal theories: the first-to-file rule, or alternatively; 28 U.S.C. § 1404(a).

The first-to-file rule provides that, "[w]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005). "The primary purpose of the rule is to conserve judicial resources and avoid conflicting rulings." *Allstate Ins. Co. v. Clohessy*, 9 F. Supp. 2d 1314, 1316 (M.D. Fla. 1998).

1

In the alternative to a dismissal based on the first-to-file rule, Defendant moves for transfer of venue pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The primary purpose of § 1404(a) is avoiding unnecessary inconvenience to the litigants, witnesses, and the public and to conserve time, energy and money. *Tampa Bay Storm, Inc. v. Arena Football League, Inc.*, 932 F. Supp. 281, 282 (M.D. Fla. 1996).

The consolidated class action pending in the Northern District of California, *In re Uber Text Messaging*, No. 4:18-cv-02931-HSG (N.D. Cal., Filed May 18, 2018), began as *Lucius Manning v Uber Technologies, Inc*. The complaint sought to certify a class consisting of, among others, person who were sent a "Uber Code" text message by or on behalf of Uber, using an automatic telephone dialing system, and from whom Uber did not have the requisite consent.

*Manning* was soon followed by *Carla Vario v. Uber Technologies, Inc.*, No. 4:18-cv-03829-HSG (N.D. Cal., Filed June 27, 2018) and *Shelton Bollinger v. Uber Technologies, Inc*., Case No. 4:18-cv-04538-HSG (N.D. Cal., Filed July 26, 2018). These three cases were consolidated into *In re Uber Text Messaging* on Sept. 27, 2018. On October 4, 2018, a consolidated complaint was filed on behalf of plaintiffs Lucius Manning, Carla Vario, Wanda Rogers, Andrew Katzman, and Christopher Ziers.[1]

On November 1, 2018, Uber Technologies, Inc. filed a Motion to Compel Arbitration as to Lucius Manning, Andrew Katzman, and Carla Vario, and to Stay the Action, including Wanda Rogers's and Christopher Ziers's claims. On November 9, 2018, Plaintiffs Lucius Manning, Andrew Katzman, and Carla Vario voluntarily dismissed their claims against Defendant Uber Technologies, Inc. without prejudice.

That same day, remaining Plaintiffs Wanda Rogers and Christopher Ziers filed

---

[1] Shelton Bollinger did not join in the consolidated complaint and voluntarily dismissed his claims against Uber Technologies, Inc. without prejudice.

their response to Uber's motion to compel arbitration, pointing out that "Defendant's Motion to Stay should be denied as moot. The Plaintiffs in this action who were potentially subject to Uber's supposed arbitration provision have voluntarily dismissed their claims." Rather than dismissing its motion, Uber doubled-down, alleging for the first time that Plaintiff Ziers may have created an Uber account, allegedly making him subject to arbitration as well, and stating further: "Uber therefore intends to file a motion to compel against Ziers and is meeting and conferring with Plaintiffs' counsel about that motion." As promised, on December 17, 2018, Uber filed its Motion to Compel Arbitration as to Plaintiff Christopher Ziers and to Stay the Action, Including Wanda Rogers's Claims. As of this date, that motion remains pending, with no resolution in sight.

In sum, after 10 months of litigation, *In re Uber Technologies* has been pared down to only two plaintiffs—neither of whom reside in the Northern District of California. While one claim may potentially be subject to arbitration, the other's claim is mired in the unrelated motion practice; and Uber has yet to substantively respond to the complaint.

On the other hand, the instant case, filed on January 12, 2019, is on a fast-track to resolution. A scheduling order is already in place; Uber has filed an answer to the complaint; Plaintiff has already subpoenaed his cellular carrier, and mediation is already set for April 24, 2019. And, unlike *In re Uber Text Messaging,* there is no issue of arbitration.

Transfer of this action for consolidation into *In re Uber Text Messaging*, will do anything but serve the convenience of the parties or the interest of justice. In fact, it does just the opposite and would be highly prejudicial; *In re Uber Technologies* has become a black hole, which has already sucked in Plaintiffs Ziers and Rogers, and now has its sights set on Plaintiff Glasgo. The facts present in this case are the antithesis of

those required to support a § 1404(a) transfer. Uber's motion should be denied in its entirety and this case should be permitted to proceed in the Middle District of Florida.

## ARGUMENT

### A. THE FIRST-TO-FILE RULE IS DISCRETIONARY AND SHOULD NOT BE APPLIED HERE.

#### 1. Legal Standard

The so-called "first-filed rule" provides that "where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1136 (11th Cir. 2005). The result of this presumption is that "the party objecting to jurisdiction in the first-filed forum carry the burden of proving 'compelling circumstances' to warrant an exception to the first-filed rule." *Id*. ***The first-filed rule should not be applied too rigidly or mechanically and a District Court may in its discretion decline to follow the first-filed rule if following it would frustrate rather than further these purposes***. See *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) (emphasis added).

#### 2. The First-Filed Rule Should Not Be Applied Here.

Uber hopes to transfer this action to the Northern District of California by invoking the first-filed rule, pursuant to which "[i]n absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydn*, 675 F.2d 1169, 1174 (11th Cir.1982). Uber's position is that because *In re Uber Text Messaging* (a mere shell of its former self) predates the instant action, this Court should apply the first-filed rule and either dismiss this case or transfer it to the Northern District of California.

The flaw in this argument is that the first-filed rule is not an absolute, mandatory, inflexible requirement. Rather, courts have routinely cautioned against rote, mechanical application of the first-filed rule, and instead weigh the first-filed issue in

4

the broader context of the ends of justice. *See, e.g., Lockheed Martin Corp. v. L-3 Communications Corp.*, 405 F.Supp.2d 1381, 1383 (N.D. Ga. 2005) (recognizing that "first-filed rule should not be mechanically applied"); *Barnett v. Alabama*, 171 F.Supp.2d 1292, 1296 (S.D.Ala.2001) ("we are mindful that the rule is not meant to be rigid, mechanical or inflexible, but is to be applied in a manner that best serves the interests of justice"). Indeed, "[t]he most basic aspect of the first-to-file rule is that it is discretionary; an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts." *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991); *see also Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Associates, Inc.*, 16 Fed. Appx. 433, 434 (6th Cir. 2001) ("District courts have the discretion to dispense with the first-to-file rule where equity so demands.").

It is not unheard of for a court to disregard the first-to-file rule in a FACTA class action when—as here—the balance of convenience is tipped in favor of another jurisdiction. *See, e.g., Rosen v. Spirit Airlines, Inc.*, 152 F. Supp. 3d 1055, 1065 (N.D. Ill. Jun. 17, 2015) ("…this Court declines to impose the first-filed rule under circumstances where its application impedes the efficient and consistent resolution of the Rosen and Legg class actions"). The record here shows that this case, unlike *In re Uber Text Messaging*, is well on its way to an efficient and consistent resolution. Transfer in this instance will serve no purpose other than to impede the efficient resolution of this case.

Not surprisingly, Uber avoids disclosing *In re Uber Text Messaging* is mired in motion practice as it seeks to force one of the two remaining plaintiffs into arbitration while seeking to stay the claims of the other one. If fact, Uber doesn't even disclose the fact that *In re Uber Text Messages* has already lost all but *two* of its plaintiffs including the original plaintiff, Lucius Manning. As such, it is arguably no longer worth maintaining the case as a consolidated action in the first place.

5

After review of the current posture of *In re Uber Text Messages*, it becomes clear that Uber is merely seeking to use that case as a vehicle through which to obtain an immoderate stay in this action, along with any others that might come behind. The "compelling circumstances" necessary to remove this action from the ambit of the first-filed rule do not exist. The interests of justice are not and cannot served by observing the first-filed rule here; therefore, the Court should decline to dismiss, transfer, or stay this action, based on the discretionary, first-filed rule.

    **B.    TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA IS NOT IN THE INTEREST OF JUSTICE, NOR WOULD IT BE MORE CONVENIENT FOR THE PARTIES AND WITNESSES.**

    **1.    Legal Standard**

A matter may be transferred to another district "[f]or the convenience of parties and witnesses, [and] in the interest of justice." 28 U.S.C. 1404(a). Courts conduct a two-prong analysis to review a transfer request. First, the court considers whether the action could have been filed in the alternate venue originally. *Steifel Lab., Inc. v. Galderma Labs. Inc.*, 588 F. Supp. 2d 1336, 1338–39 (S.D. Fla. 2008). The second consideration is whether, on balance, the convenience of the parties and witnesses and the interest of justice weighs in favor of this Court retaining this case or transferring it to the Northern District of California. Some of the factors to be considered include: Plaintiffs' initial choice of forum, convenience of the parties and witnesses, availability of compulsory process for witnesses, relative ease of access to sources of proof, location of relative documents, financial ability to bear the cost of the change, public interest, and all other practical problems that make trial of the case easy, expeditious, and inexpensive. *Mason v. Smithkline Beecham Clinical Laboratories*, 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001).

### 2. The Relevant Factors Weigh in Favors of Denial of the Motion to Transfer.

Plaintiff concedes the first prong of the transfer analysis. This case could have been brought originally in the Northern District of California because Uber is headquartered in San Francisco, California. 28 U.S.C. § 1391(b)(1). However, the second prong favors denying the motion to transfer.

**(i)** *Plaintiff's Choice of Forum.*

A plaintiff's choice of forum must be afforded considerable deference, where, as here, the plaintiff has elected to bring suit in the district in which he resides. *See Patel v. Howard Johnson Franchise Systems*, 928 F.Supp. 1099, 1101 (M.D.Ala.1996). And, the plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations. *Howell v. Tanner*, 650 F. 2d 610, 616 (5th Circuit 1981). Of the two remaining plaintiffs in *In re Uber Text Messaging*, only one, Wanda Rogers, is a resident of California; in Chula Vista, approximately 500 miles south of Oakland, where *In re Uber Text Messaging* is venued. The other, Christopher Ziers, resides in New Jersey; about as far from California as one can get. The original plaintiff, Lucius Manning, isn't even involved anymore; he dismissed his claim. Finally, Uber has caused injury to a Florida resident through its acts that took place in this state, a state that Uber also conducts substantial business in[2]. Transferring this case to Northern District of California would merely shift inconvenience from Uber—who resides in San Francisco—to Plaintiff, who, like Rogers and Ziers, resides far outside the Northern District of California. Based upon the foregoing, Plaintiff's choice of forum should not be overruled.

**(ii)** *Convenience of Defendant.*

Naturally, Uber wants to litigate this case in the Northern District of California; its headquarters are located in San Francisco. However, where a transfer "merely shifts

---

[2] https://www.uber.com/info/florida/ (Last Accessed: March 20, 2019).

the inconvenience from one party to another, Plaintiff's choice of forum should remain." *Eye Care International, Inc. v. Underhill*, 119 F.Supp.2d 1313, 1319 (M.D.Fla.2000). With one Plaintiff in *In re Uber Text Messaging* residing a stones-throw from the Mexican border (far from San Francisco), and the other more than 3000 miles away in New Jersey, Uber has no other reason for wanting to litigate in the Northern District of California other than for its own convenience. Uber has already assembled its defense team in the Middle District of Florida. There are no indications that litigation in Florida would be substantially more inconvenient for Defendant than litigation in California would be for Plaintiff. Accordingly, this factor weighs in favor of maintaining venue in the Middle District of Florida.

**(iii)** *Convenience and Availability of Witnesses.*

Without identifying any of them, Uber claims, "the majority of the witnesses are not located in this district. Indeed, the proposed class in the *In re Uber Text Messaging* "purports to include members throughout the country." Uber claims that it is not aware of any non-party witnesses residing in the Middle District of Florida. But, at the same time, Uber fails to identify any non-party witnesses who reside anywhere else. On thing is certain, however. No plaintiff resides in the Northern District of California and everyone involved in this action, other than Uber, will suffer inconvenience if forced to continue to litigate in the Northern District of California.

**(iv)** *Location and Availability of Evidence.*

While the location of evidence is generally a relevant factor in the § 1404(a) analysis, the location of documentary evidence is a minor consideration. Documents may easily be sent by mail, copied or even faxed to a remote location. *Picker Intern., Inc. v. Travelers Indem. Co*., 35 F. Supp. 2d 570 (N.D. Ohio 1998). Moreover, today, the majority of documents and records are stored electronically and can therefore be easily transferred, or can be readily converted into electronic form. *See Blanken v. Kentucky Highlands Investment Corporation*, No. 4: 14-cv-00428 (M.D. Pa. Oct. 7,

2014). It is highly likely that almost all of the evidence in this case is stored electronically and will likely be produced in an electronic form. Thus, the transfer of this case will do nothing to make access to sources of proof any more convenient for the parties.

**(v)** *The Interests of Justice.*

As for the interests of justice, the court looks at the same factors that have been traditionally used in applying the doctrine of forum non conveniens. *Moore v. McKibbon Bros., Inc*., 41 F. Supp. 2d 1350, 1357 (N.D. Ga. 1998). Although the court may exercise much discretion in this area, the Supreme Court has outlined several criteria to consider including access to evidence, availability of witnesses, the cost of obtaining witnesses, the possibility of a jury view, "and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

Uber argues that transfer to the Middle District of Florida will, among other things, avoid duplicative litigation. However, the only thing this case has in common with *In re Uber Text Messaging* is that both plaintiffs have filed a complaint. Uber has spent the past ten (10) months in California deploying procedural roadblocks and shedding plaintiffs through ancillary motions.[3] On the other hand, in this case, Uber has filed an answer and affirmative defenses, scheduled mediation, and by now, should be in the process of preparing to respond to the Court's interrogatories and production of documents. No one's interests but Ubers would be served by transferring this case to the Northern District of California.

Finally, Uber suggests that "with both cases in California, Judge Gilliam would be able to manage the actions in order to avoid duplicative discovery, motion practice,

---

[3] Recall that Uber has alleged that 4 of the 5 named Plaintiffs in *In re Uber Text Messaging* are subject to arbitration. All but 2 have already dismissed their claims. And the remaining Plaintiff (who might actually have a valid claim against Uber) resides in a different district and was not even involved in the initial action.

and unnecessary costs." It is worth pointing out that the Court is imminently able to do the same, and more. Indeed, more has been done here to manage this action and avoid unnecessary costs in only two (2) months than has been accomplished in California in nearly a year. It is not a stretch to imaging that this case could reach its conclusion even before the threshold issue of arbitrability is settled in California.

### C. A STAY IS NOT APPROPRIATE

Lastly, Uber argues that "if the Court declines to dismiss or transfer this action, the Court should stay the case pending resolution of *In re Uber Text* to preserve the Court's and the parties' resources and to avoid inconsistent rulings in two nearly identical cases. This is an interesting claim because the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. A side-by-side comparison of the two cases reveals that it is this case, not *In re Uber Text Messaging* that is pursuing a "just, speedy, and inexpensive" determination of the action. Uber has pared the Northern District of California case down to two out-of-district plaintiffs (who weren't even involved in the initial action).

In reality, Uber has already achieved a *de facto* stay in that case by arguing that Plaintiff Ziers' claims are subject to arbitration. It defies common sense to argue that in order to secure the just, speedy, and inexpensive determination of this case, it should be transferred into another district, into another case which, for all intents and purposes, is already immersed in a *de facto* immoderate stay. Just as this case should not be dismissed or transferred, it should not be stayed.

## CONCLUSION

In conclusion, while Uber has attempted to cobble together several reasons why this litigation would be more properly conducted in California, it has not carried the burden of showing that the preference for Plaintiff's choice of forum is "clearly

10

outweighed" by other considerations. It is abundantly clear that it is not. Accordingly,

Defendant's motion should be denied in its entirety.
Date: March 22, 2019

                                    Respectfully submitted,

                                    /s/ *Scott D. Owens*
                                    Scott D. Owens, Esq.
                                    Scott D. Owens, P.A.
                                    3800 S. Ocean Dr., Ste. 235
                                    Hollywood, FL 33019
                                    Tel: 954-589-0588
                                    Fax: 954-337-0666
                                    scott@scottdowens.com

                                    Leo W. Desmond, Esq.
                                    Desmond Law Firm, P.C.
                                    5070 Highway A1A. Suite D
                                    Vero Beach, FL 32963
                                    Tel: 772-231-9600
                                    Fax: 772-231-0300
                                    lwd@desmondlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 22, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this date via U.S. mail and/or some other authorized manner for those counsel or parties, if any, who are not authorized to receive electronically Notices of Electronic Filing.

                                By: s/ *Scott D. Owens*
                                      Scott D. Owens, Esq.